**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

<u>CIVIL MINUTES -- GENERAL</u>

Case No.    **CV 16-4271-JFW (ASx)**                           Date:  December 21, 2017

Title:          Keo Ratha, et al. -v- Phatthana Seafood Co., Ltd., et al.

**PRESENT:**

    **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| Shannon Reilly | None Present |
|---|---|
| Courtroom Deputy | Court Reporter |

**ATTORNEYS PRESENT FOR PLAINTIFFS:**    **ATTORNEYS PRESENT FOR DEFENDANTS:**
    None                                                                             None

**PROCEEDINGS (IN CHAMBERS):**    **ORDER GRANTING DEFENDANT S.S. FROZEN FOOD CO., LTD.'S MOTION FOR SUMMARY JUDGMENT [filed 11/20/17; Docket No. 145]**

      On November 20, 2017, Defendant S.S. Frozen Food Co., Ltd. ("SSF") filed a Motion for Summary Judgment ("Motion").  On November 27, 2017, Plaintiffs Keo Ratha ("Ratha"), Sem Kosal ("Kosal"), Sophea Bun ("Bun"), Yem Ban ("Ban"), Nol Nakry ("Nakry"), Phan Sophea ("Sophea"), and Sok Sang ("Sang") (collectively, "Plaintiffs") filed their Opposition.  On December 4, 2017, SSF filed a Reply.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument.  The matter was, therefore, removed from the Court's December 18, 2017 hearing calendar and the parties were given advance notice.  After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.     Factual and Procedural Background**[1]

    **A.     Factual Background**

      In their Complaint, Plaintiffs bring claims under the Trafficking Victims Protection Act ("TVPA") against SSF, Phatthana Seafood Co., Ltd. ("Phatthana"), Rubicon Resources, LLC ("Rubicon"), and Wales & Co. Universe, Ltd. ("Wales") (collectively, "Defendants").  Plaintiffs are

---

    [1] To the extent any of these facts are disputed, they are not material to the disposition of this motion.  In addition, to the extent that the Court has relied on evidence to which the parties have objected, the Court has considered and overruled those objections.  As to the remaining objections, the Court finds that it is unnecessary to rule on those objections because the disputed evidence was not relied on by the Court.

rural Cambodian villagers who allege they were victims of human trafficking as a result of their recruitment and employment at seafood processing factories in Songkhla, Thailand. SSF, a family-owned Thai corporation, and Phatthana, a Thai corporation, own the factories at which Plaintiffs worked. However, the only Plaintiff who worked at SSF's factory is Ratha, who worked at SSF's factory from November 2011 through late January 2012.

Rubicon and Wales, which have addresses in the United States, did not recruit or employ Plaintiffs, but are alleged to have benefitted from their labor. Rubicon, a Delaware limited liability company with its principal place of business in Culver City, California, was formed in 1999 as a joint venture to market and sell seafood to customers in the United States. Wales, a Thai corporation registered to do business in California, is a member of Rubicon.[2]

SSF has never had any employees in the United States or an address in the United States. In addition, SSF has never had an ownership interest in any of the other Defendants (Phatthana, Rubicon, or Wales) and none of those Defendants have ever had an ownership interest in SSF. Moreover, SSF has never done business with Rubicon or Wales. SSF received a single purchase order – not through Rubicon – from a United States company in October 2009, which resulted in a single sale of frozen squid that was delivered to the United States in January 2010. SSF made no sales or deliveries to the United States in 2011, 2012, and 2013. Although SSF has been registered with the Food and Drug Administration ("FDA") as a food facility, other than the single delivery to the United States in January 2010, there is no evidence that SSF ever sold any product in the United States.

### B. Procedural Background

On June 15, 2016, Plaintiffs filed a Complaint against Defendants, alleging claims for: (1) violation of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595, against Phatthana and SSF and Rubicon and Wales; and (2) violation of the Alien Tort Statue ("ATS") against all Defendants. Specifically, Plaintiffs allege in Count 1 that they were victims of peonage, forced labor, involuntary servitude, and human trafficking by Phatthana and SSF in violation of Sections 1581 (peonage), 1584 (sale into involuntary servitude), 1589 (forced labor), 1590 (trafficking with respect to peonage, slavery, involuntary servitude, or forced labor), 1592 (unlawful conduct with respect to documents in furtherance of trafficking, peonage, slavery, involuntary servitude, or forced labor), and 1593A (benefitting financially from peonage, slavery, and trafficking in persons). Plaintiffs allege in Count 2 that Rubicon and Wales knowingly benefitted from participation in a venture that they knew or should have known was engaged in peonage, forced labor, involuntary servitude, unlawful conduct with respect to documents, and human trafficking. Plaintiffs allege in Count 3 that they were the victims of the torts of trafficking in persons, involuntary servitude, and forced labor. On November 7, 2016, the Court granted in part and denied in part Defendants' Motion to Dismiss Complaint. In the November 7, 2016 Order, the Court granted Defendants' Motion to Dismiss Complaint with respect to Plaintiff's ATS claims and dismissed the ATS claim without leave to amend, and denied Defendants' Motion to Dismiss Complaint with respect to Plaintiffs' TVPRA claims. On November 23, 2016, Defendants filed their Answers. On December 14, 2016, Defendants filed Amended Answers. All Defendants have now

---

[2] Although there are other members of Rubicon, they are not Defendants in this action.

filed motions for summary judgment.

## II. Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party meets its burden, a party opposing a properly made and supported motion for summary judgment may not rest upon mere denials but must set out specific facts showing a genuine issue for trial. *Id.* at 250; Fed. R. Civ. P. 56(c), (e); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data."). In particular, when the non-moving party bears the burden of proving an element essential to its case, that party must make a showing sufficient to establish a genuine issue of material fact with respect to the existence of that element or be subject to summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is not enough to defeat summary judgment; there must be a genuine issue of material fact, a dispute capable of affecting the outcome of the case." *American International Group, Inc. v. American International Bank*, 926 F.2d 829, 833 (9th Cir. 1991) (Kozinski, dissenting).

An issue is genuine if evidence is produced that would allow a rational trier of fact to reach a verdict in favor of the non-moving party. *Anderson*, 477 U.S. at 248. "This requires evidence, not speculation." *Meade v. Cedarapids, Inc.*, 164 F.3d 1218, 1225 (9th Cir. 1999). The Court must assume the truth of direct evidence set forth by the opposing party. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992). However, where circumstantial evidence is presented, the Court may consider the plausibility and reasonableness of inferences arising therefrom. *See Anderson*, 477 U.S. at 249-50; *TW Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631-32 (9th Cir. 1987). Although the party opposing summary judgment is entitled to the benefit of all reasonable inferences, "inferences cannot be drawn from thin air; they must be based on evidence which, if believed, would be sufficient to support a judgment for the nonmoving party." *American International Group*, 926 F.2d at 836-37. In that regard, "a mere 'scintilla' of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997).

## III. Discussion

In its Motion, SSF seeks summary judgment on the only claim alleged against it – violation of the TVPRA – on the grounds that this Court does not have subject matter jurisdiction over that claim because all of the alleged human trafficking of Plaintiffs occurred in Cambodia and Thailand and SSF, a Thai company, does not fall under TVPRA's limited grant of extraterritorial jurisdiction.

### A. The TVPRA

The TVPRA was enacted to address the serious problem of human trafficking into and from the United States. Although it is primarily a criminal statute, it also contains a civil remedy provision:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees.

18 U.S.C. §1595(a).  The TVPRA was amended in 2008 to add a limited grant of extraterritorial jurisdiction:

> In addition to any domestic or extra-territorial jurisdiction otherwise provided by law, the courts of the United States have extra-territorial jurisdiction over any offense (or any attempt or conspiracy to commit an offense) under section 1581, 1583, 1584, 1589, 1590, or 1591 if –
>
> (1) an alleged offender is a national of the United States or an alien lawfully admitted for permanent residence (as those terms are defined in section 191 of the Immigration and Nationality Act (8 U.S.C. 1101));
> or
> (2) an alleged offender is present in the United States, irrespective of the nationality of the alleged offender.

18 U.S.C. §1596(a).[3]  According to the legislative history, Section 1596 was enacted to "facilitat[e] extraterritorial prosecutions against international trafficking criminals" and eliminate the United States as a "safe haven" for non-U.S. citizens who commit crimes abroad.  H.R. Rep. No. 110-430(I), at 35, 55 (2007); *Legal Options to Stop Human Trafficking: Hearing before the Subcomm. on Human Rights and the Law of the S. Comm. on the Judiciary*, 110th Cong. 24-25 (2007) (statement of Sen. Richard J. Durbin, Chairman, S. Subcomm. on Human Rights and the Law).

### B. This Court Does Not Have Subject Matter Jurisdiction Over the Claim Alleged Against SSF.

In its Order granting in part and denying in part Defendants' Motion to Dismiss Complaint, the Court held that, at the pleading stage, Plaintiffs had sufficiently alleged subject matter jurisdiction:

> [T]he Court concludes that given Plaintiffs' allegations in the Complaint, subject matter jurisdiction exists.  A corporation is present in a jurisdiction where it uses an agent to conduct its affairs.  In their Complaint, Plaintiffs have alleged that Defendants are involved in a joint venture and part of an "integrated enterprise."  In

---

[3] The grant of extraterritorial jurisdiction under Section 1596 of the TVPRA does not extend to the violations of Section 1592 (unlawful conduct with respect to documents in furtherance of trafficking, peonage, slavery, involuntary servitude, or forced labor) and 1593A (benefitting financially from peonage, slavery, and trafficking in persons)) alleged in Plaintiffs' Complaint.

addition, Plaintiffs allege that Rubicon and Wales are physically present in the United States and are joint venturers or agents of Phatthana and [SSF], which is sufficient for subject matter jurisdiction over all Defendants.

In its Motion, SSF again challenges subject matter jurisdiction and now argues that the undisputed facts demonstrate that the Court lacks subject matter jurisdiction over Plaintiffs' claims because Plaintiffs have failed to demonstrate that SSF is present in the United States. Plaintiffs argue that subject matter jurisdiction exists because SSF never contested personal jurisdiction, thereby waiving any argument that there is no subject matter jurisdiction. In addition, Plaintiffs claim that subject matter jurisdiction exists because SSF is the alter ego of Rubicon, or SSF is part of an integrated enterprise, or SSF received benefit in the United States from Ratha's labor.[4] The Court concludes that none of Plaintiffs' theories demonstrate that the Court has subject matter jurisdiction over the claim alleged against SSF.

### 1. Minimum Contacts

In their Opposition, Plaintiffs argue that because SSF never contested personal jurisdiction, it should be estopped from challenging subject matter jurisdiction. However, as SSF correctly argues, subject matter jurisdiction can never be waived. Fed. R. Civ. P. 12(h)(3); *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982). In addition, there is no authority to support Plaintiff's argument that "present in" as used in Section 1596(a)(2) of the TVPRA has the same meaning as the terms "'present' or 'presence'" typically used in the minimum contacts analysis for determining personal jurisdiction. Plaintiffs argue that Congress – by changing the language in the original version of Section 1596(a)(2) from "the alleged offender is brought into, or found in, the United States" to "an alleged offender is present in the United States" – intended to eliminate the physical presence requirement and, thus, intended that minimum contacts would be sufficient. However, the legislative history relied on by Plaintiffs fails to explain why Congress made the change in the language in the original version of §1596(a)(2). Moreover, the case law relied on by Plaintiffs contradicts their argument that the phrase "present in" without the modifier "physical" means that minimums contacts suffices. For example, in *U.S. v. Yousef*, 327 F.3d 56 (2d Cir. 2003), the court held that the phrase "present in" – without the modifier "physical" – has the same meaning as "found in" in the context of determining the extraterritorial jurisdiction of a criminal statute. *Id.* at 90. Therefore, the Court concludes that Plaintiffs cannot establish extraterritorial jurisdiction, and thus subject matter jurisdiction, by simply relying on their minimum contacts analysis. To the contrary, substituting personal jurisdiction for extraterritorial jurisdiction would not only make subsection (a)(1) superfluous, but would also expand the reach of

---

[4] SSF also moved for summary judgment on the grounds that SSF is not in an agency relationship with Rubicon or Wales and SSF is not in a joint venture with Rubicon or Wales. *See* Motion, 6:5-7:2. To the extent Plaintiffs have not otherwise addressed these issues, the Court concludes that they have been conceded. *See Ramirez v. Ghilotti Bros. Inc.*, 941 F.Supp. 2d 1197 (N.D. Cal. 2013) (deeming argument was conceded where the defendant failed to address it in its opposition); *see also, Qureshi v. Countrywide Home Loans, Inc.*, 2010 WL 841669, *6 n. 2 (N.D. Cal. Mar. 10, 2010) (deeming plaintiff's failure to address in opposition brief claims challenged in a motion to dismiss, an "abandonment of those claims") (*citing Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n. 4 (9th Cir. 2005)).

extraterritorial jurisdiction to offenses wholly occurring in foreign countries, exclusively involving foreign victims, and that were perpetrated by foreign offenders who never set foot in the United States. This unwarranted expansion does not comport with the "basic premise of our legal system that, in general, 'United States law governs domestically but does not rule the world.'" *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090, 2100 (2016).

Accordingly, Plaintiffs have failed to demonstrate that the Court has subject matter jurisdiction over Plaintiffs' claim against SSF because SSF failed to contest personal jurisdiction.

    **2.    Alter Ego**

Plaintiffs also argue that this Court has subject matter jurisdiction because SSF is the alter ego of Rubicon, which by virtue of being a Delaware limited liability company, is present in the United States. Under California law, the test for alter ego is whether "there is such unity of interest and ownership that the separate personalities of the corporation and the individuals no longer exist and . . . that failure to disregard the corporation would result in fraud or injustice." *ADO Fin., AG v. McDonnell Douglas Corp.*, 931 F.Supp. 711, 716 (C.D. Cal. 1996); *Associated Vendors, Inc. v. Oakland Meat Co.,* 210 Cal. App. 2d 825, 838-40 (1962). Similarly, under Delaware law, "in order to state a claim for piercing the corporate veil under the alter ego theory, [a party] must show (1) that the corporation and its shareholders operated as a single economic entity, and (2) that the overall element of injustice or unfairness is present."[5] *Trevino v. Merscorp, Inc.*, 583 F.Supp. 2d 521, 528 (D. Del. 2008) (listing the factors to be considered in determining alter ego as undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of the debtor corporation at the time, siphoning the corporation's funds by the dominant stockholder, absence of corporate records, and the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders). However, "[t]he alter ego theory [only] comes into play in piercing the corporate veil when one seeks to hold liable an individual *owner* who controls the [company]." *In re Opus East, L.L.C.,* 480 B.R. 561, 570 (Bankr. D. Del. 2012) (emphasis in the original).

Despite Plaintiffs' argument to the contrary, there is no evidence that SSF is the alter ego of either Rubicon or Wales, the only Defendants present in the United States. SSF has never been a member of Rubicon and, thus, does not qualify as an owner of Rubicon. Conversely, Rubicon has never been a shareholder in SSF and, thus, does not qualify as an owner of SSF. SSF has never been a shareholder in Wales, and, thus, does not qualify as an owner of Wales. Conversely, Wales has never been a shareholder in SSF and, thus, does not qualify as an owner of SSF. As a result, the Court concludes that SSF is not the alter ego of either Rubicon or Wales. *See, e.g., Opus*, 480 B.R. at 566 (refusing to pierce the corporate veil as a matter of law and without considering any alter ego factors with respect to a limited liability company and the parent corporation to the limited liability company's sole member because the parent corporation did "not have any controlling interest" in the limited liability company).

---

    [5] Because Rubicon is a Delaware limited liability company and the other Defendants are Thai corporations, Defendants argue that Delaware law applies. Plaintiffs argue that California law applies. However, the analysis of alter ego under either California or Delaware law is the same.

In an effort to demonstrate that SSF is the alter ego of Rubicon, Plaintiffs argue that "Defendants share substantially identical ownership" and argue that all of the Defendants as well as non-defendants Paibool Dussadeevutikul ("Dussadeevutikul"), P&M Holdings, and PTN Group are essentially all the same entity. For example, Plaintiffs argue that Dussadeevutikul is the majority owner of P&M Holdings, SSF, and Phatthana and that Dussadeevutikul "sometimes refers to the companies he owns" as the PTN Group. However, the PTN Group is not a legal entity, but merely a marketing moniker and, thus, cannot have "subsidiaries." Moreover, the shared use of marketing materials alone does not alter the distinction between separate corporate entities. *See Enterprise Rent-A-Car Wage & Hour Employment Practices Litigation*, 735 F.Supp. 2d 277, 323 (W.D. Pa. 2010) (holding that "common marketing image and joint use of trademarked logos fail to render" a wholly-owned subsidiary "an alter ego" of its parent). Furthermore, Dussadeevutikul's ownership of a majority interest in multiple companies, without more, is insufficient to pierce the corporate veil as to any of the companies in which Dussadeevutikul owns an interest.

The evidence presented by Plaintiffs on the issue of alter ego is generally limited to the relationship between SSF and Phatthana.[6] For example, Plaintiffs point out that Dussadeevutikul owns a majority interest in SSF and Phatthana, SSF and Phatthana share a corporate headquarters in Bangkok, and SSF and Phatthana share the same individual overseeing human resources. However, this evidence alone is not sufficient to demonstrate the existence of an alter ego relationship between SSF and Phatthana. Moreover, even if Plaintiffs could demonstrate SSF and Phatthana were alter egos, as discussed above, Plaintiffs have failed to demonstrate that SSF and Rubicon or SSF and Wales are alter egos, which is necessary in order for Plaintiffs to demonstrate that this Court has subject matter jurisdiction over the claim alleged against SSF.

Accordingly, the Court concludes that SSF is entitled to summary judgment on Plaintiffs' alter ego theory.

### 3. Integrated Enterprise

Plaintiffs argue that SSF is part of an "integrated enterprise" with Rubicon and, therefore, SSF is present in the United States, thereby allowing the Court to exercise subject matter jurisdiction over the claim alleged against SSF. SSF argues that the integrated enterprise test is not applicable in this case. The Court agrees. The "integrated enterprise" test is used to determine whether an employer has enough employees to be covered by the anti-discrimination provisions of Title VII of the Civil Rights Act. *Kang v. U. Lim. Am., Inc.*, 296 F.3d 810, 815-16 (9th Cir. 2002). Moreover, even if the integrated enterprise test could be properly applied in this case, Plaintiffs lack any evidence that SSF and Rubicon are part of an integrated enterprise. In *Kang*, the court examined four factories to determine if the existence of an integrated enterprise existed: (1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership of financial control.

---

[6] Plaintiffs argue that SSF and Phatthana are not separate companies in an attempt to establish a parent-subsidiary or common ownership relationship. Plaintiffs then attempt to link SSF to Rubicon by arguing that Rubicon and Phatthana are both owned by PTN Group, and, thus, Rubicon and Phatthana are alter egos of one another. The Court concludes that there is no evidence to support this argument.

In this case, there is no evidence that the separate operations of Rubicon and SSF are interrelated. *See, e.g., Hukill v. Auto Care, Inc.*, 192 F.3d 437, 443 (4th Cir. 1999) (examining factors such as whether companies operated at separate locations, filed separate tax returns, held separate director and shareholder meetings, conducted separate banking, purchased goods separately, entered into lease agreements separately, and were separately managed). There is also no evidence of common management. Although Dussadeevutikul was SSF's managing director, Brian Wynn, not Dussadeevutikul, was Rubicon's sole manager. In addition, there is no evidence that any SSF employees reported to Rubicon or that Rubicon was involved in the management of SSF. *See, e.g., Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1241 (2d Cir. 1995) (holding that two companies had "common management structure" and that president of the subsidiary operated out of the parent corporation's office). In addition, there is no evidence that Rubicon had any involvement in SSF's labor relations. In fact, there is no evidence that any Rubicon employee ever visited the SSF factory. Finally, there is no evidence of common ownership or financial control. Rubicon and SSF do not have identical ownership and there is no evidence that SSF ever transferred funds to Rubicon.

Accordingly, the Court concludes that SSF is entitled to summary judgment on Plaintiffs' integrated enterprise theory.

### 4. Benefit in the United States

Finally, Plaintiffs argue that even if SSF is not "present in" the U.S., the Court has subject matter jurisdiction because SSF "received a benefit in the United States from its venture that included Keo Ratha's forced labor." Opposition, 14:1–15:19. This argument borders on the frivolous. Plaintiffs fail to offer any authority or persuasive argument explaining how receiving the indirect benefits of forced labor in the United States is an exception to the requirements of Section 1596(a)(2). In addition, even if Plaintiffs' novel legal theory was applicable, the facts of this case do not support Plaintiffs' argument. It is undisputed that SSF filled a single purchase order for squid in 2009 that resulted in a single delivery of squid to the United States in January 2010. This order was filled and delivered almost two years before Ratha worked at SSF's factory. Thus, SSF received no benefit in the United States from Ratha's labor because SSF did not fill or deliver any orders to the United States during the time of Ratha's employment.[7]

Accordingly, Accordingly, the Court concludes that SSF is entitled to summary judgment on Plaintiffs' benefit theory.

---

[7] Plaintiffs also argue that SSF is present in the United States because it has a "green ticket" enabling it to export product to the United States. However, Plaintiffs have confused FDA food facility registration that enabled SSF to make its single sale to the United States in 2009 and the FDA's import alert system, which uses a red, yellow, and green rating system. A green rating under the FDA's import alert system simply means that a company does not produce goods that are contaminated or adulterated. In addition, because registration with the FDA does not establish personal jurisdiction, Plaintiffs' argument that registration with the FDA establishes subject matter jurisdiction is unpersuasive. *See Novotec Pharma, LLC v. Glycobiosciences, Inc.*, 2016 WL 54677 (D.N.J. Jan. 1, 2016).

**IV.      Conclusion**

For all the foregoing reasons, SSF's Motion is **GRANTED** in its entirety.

IT IS SO ORDERED.