**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

Case No.    **CV 16-4271-JFW (ASx)**                                    Date:  December 21, 2017

Title:    Keo Ratha, et al. -v- Phatthana Seafood Co., Ltd., et al.

**PRESENT:**

       **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| Shannon Reilly | None Present |
|---|---|
| Courtroom Deputy | Court Reporter |

**ATTORNEYS PRESENT FOR PLAINTIFFS:**            **ATTORNEYS PRESENT FOR DEFENDANTS:**
      None                                                                                      None

**PROCEEDINGS (IN CHAMBERS):**    ORDER GRANTING DEFENDANTS RUBICON RESOURCES, LLC AND WALES & CO. UNIVERSE, LTD.'S MOTION FOR SUMMARY JUDGMENT [filed 11/20/17; Docket No. 146]

      On November 20, 2017, Rubicon Resources, LLC ("Rubicon") and Wales & Co. Universe, Ltd. ("Wales") filed a Motion for Summary Judgment ("Motion").  On November 27, 2017, Plaintiffs Keo Ratha ("Ratha"), Sem Kosal ("Kosal"), Sophea Bun ("Bun"), Yem Ban ("Ban"), Nol Nakry ("Nakry"), Phan Sophea ("Sophea"), and Sok Sang ("Sang") (collectively, "Plaintiffs") filed their Opposition.  On December 4, 2017, Rubicon and Wales filed a Reply.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument.  The matter was, therefore, removed from the Court's December 18, 2017 hearing calendar and the parties were given advance notice.  After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.     Factual and Procedural Background**[1]

    **A.     Factual Background**

---

[1] To the extent any of these facts are disputed, they are not material to the disposition of this motion.  In addition, to the extent that the Court has relied on evidence to which the parties have objected, the Court has considered and overruled those objections.  As to the remaining objections, the Court finds that it is unnecessary to rule on those objections because the disputed evidence was not relied on by the Court.

In their Complaint, Plaintiffs bring claims under the Trafficking Victims Protection Reauthorization Act ("TVPRA") against Rubicon, Wales, Phatthana Seafood Co., Ltd. ("Phatthana"), and S.S. Frozen Food Co., Ltd. ("SSF") (collectively, "Defendants"). Plaintiffs are rural Cambodian villagers who allege they were victims of human trafficking as a result of their recruitment and employment at seafood processing factories in Songkhla, Thailand. SSF, a family-owned Thai corporation, and Phatthana, a Thai corporation, own the factories at which Plaintiffs worked. In the Spring of 2012, the media reported on worker complaints at Phatthana's Songkhla factory, prompting investigations by the Thai and Cambodian governments. The Thai and Cambodian governments ultimately concluded that no crimes had been committed under the Thai Anti-Trafficking Act and that workers had not been exploited.

Rubicon and Wales, which have addresses in the United States, did not recruit or employ Plaintiffs, but are alleged to have benefitted from their labor. Rubicon, a Delaware limited liability company with its principal place of business in Culver City, California, was formed in 1999 as a joint venture to market and sell seafood to customers in the United States. Wales, a Thai corporation registered to do business in California, is a member of Rubicon.[2] Wales has never had an ownership interest in SSF or Phatthana. Rubicon has never had an ownership interest in any of the other Defendants (SSF, Phatthana, or Wales).

Rubicon and Wales never had a business relationship with SSF. Although Rubicon had a business relationship with Phatthana, it was limited to ordering seafood products from Phatthana's Songkhla factory. Wales's involvement was limited to inspecting finished product ordered by Rubicon to ensure that product met Rubicon's customers' packaging specifications. With respect to working conditions and worker safety at all of the factories that Rubicon used as a source for its products, Rubicon relied on industry and government audits and certifications as well as customer visits, to ensure that the factories, including Phatthana's Songkla factory, operated in compliance with all applicable standards, including those pertaining to worker safety and welfare as well as compliance with labor laws. Wales relied on Rubicon to ensure that those factories did not exploit workers.

B.   **Procedural Background**

On June 15, 2016, Plaintiffs filed a Complaint against Defendants, alleging claims for: (1) violation of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595, against Phatthana and SSF and Rubicon and Wales; and (2) violation of the Alien Tort Statue ("ATS") against all Defendants. Specifically, Plaintiffs allege in Count 1 that they were victims of peonage, forced labor, involuntary servitude, and human trafficking by Phatthana and SSF in violation of Sections 1581 (peonage), 1584 (sale into involuntary servitude), 1589 (forced labor), 1590 (trafficking with respect to peonage, slavery, involuntary servitude, or forced labor), 1592 (unlawful conduct with respect to documents in furtherance of trafficking, peonage, slavery, involuntary servitude, or forced labor), and 1593A (benefitting financially from peonage, slavery, and trafficking in persons). Plaintiffs allege in Count 2 that Rubicon and Wales knowingly benefitted from participation in a venture that they knew or should have known was engaged in peonage, forced labor, involuntary servitude, unlawful conduct with respect to documents, and

---

[2] Although there are other members of Rubicon, they are not Defendants in this action.

human trafficking. Plaintiffs allege in Count 3 that they were the victims of the torts of trafficking in persons, involuntary servitude, and forced labor. On November 7, 2016, the Court granted in part and denied in part Defendants' Motion to Dismiss Complaint. In the November 7, 2016 Order, the Court granted Defendants' Motion to Dismiss Complaint with respect to Plaintiff's ATS claims and dismissed the ATS claim without leave to amend, and denied Defendants' Motion to Dismiss Complaint with respect to Plaintiffs' TVPRA claims. On November 23, 2016, Defendants filed their Answers. On December 14, 2016, Defendants filed Amended Answers. All Defendants have now filed motions for summary judgment.

## II.     Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party meets its burden, a party opposing a properly made and supported motion for summary judgment may not rest upon mere denials but must set out specific facts showing a genuine issue for trial. *Id.* at 250; Fed. R. Civ. P. 56(c), (e); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data."). In particular, when the non-moving party bears the burden of proving an element essential to its case, that party must make a showing sufficient to establish a genuine issue of material fact with respect to the existence of that element or be subject to summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is not enough to defeat summary judgment; there must be a genuine issue of material fact, a dispute capable of affecting the outcome of the case." *American International Group, Inc. v. American International Bank*, 926 F.2d 829, 833 (9th Cir. 1991) (Kozinski, dissenting).

An issue is genuine if evidence is produced that would allow a rational trier of fact to reach a verdict in favor of the non-moving party. *Anderson*, 477 U.S. at 248. "This requires evidence, not speculation." *Meade v. Cedarapids, Inc.*, 164 F.3d 1218, 1225 (9th Cir. 1999). The Court must assume the truth of direct evidence set forth by the opposing party. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992). However, where circumstantial evidence is presented, the Court may consider the plausibility and reasonableness of inferences arising therefrom. *See Anderson*, 477 U.S. at 249-50; *TW Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631-32 (9th Cir. 1987). Although the party opposing summary judgment is entitled to the benefit of all reasonable inferences, "inferences cannot be drawn from thin air; they must be based on evidence which, if believed, would be sufficient to support a judgment for the nonmoving party." *American International Group*, 926 F.2d at 836-37. In that regard, "a mere 'scintilla' of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997).

## III.    Discussion

In their Motion, Rubicon and Wales seek summary judgment on the only claim alleged against it – violation of the TVPRA – on the grounds that Rubicon and Wales did not knowingly

participate in a human trafficking venture and did not knowingly benefit from such participation.[3]

### A.     The TVPRA

The TVPRA was enacted to address the serious problem of human trafficking into and from the United States.  Although it is primarily a criminal statute, it also contains a civil remedy provision:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees.

18 U.S.C. §1595(a).  The "knowingly benefits" language contained in Section 1595(a) is also used in Section 1593A of the TVPRA: "[w]hoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in any act in violation of section 1581(a), 1592, or 1595(a), knowing or in reckless disregard of the fact that the venture has engaged in such violation, shall be fined under this title or imprisoned in the same manner as a completed violation of such section."  In addition, "knowingly benefits" is used in subsection 1589(b) of the TVPRA: "[w]hoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means, shall be punished as provided in subsection (d)."

### B.     Wales and Rubicon Did Not Knowingly Participate in or Benefit from a Human Trafficking Venture.

In its Order granting in part and denying in part Defendants' Motion to Dismiss Complaint, the Court held that, at the pleading stage, Plaintiffs had sufficiently alleged violations of the TVPRA.  In their Motion, Rubicon and Wales now argue that Plaintiffs do not have any facts to prove their allegations that Rubicon and Wales knowingly participated in a human trafficking venture and knowingly benefitted from that participation.

---

[3]  Rubicon and Wales also move for summary judgment on the grounds that none of the Defendants are alter egos of one another, Rubicon and Wales are not in an agency relationship with Phatthana and SSF, and Rubicon and Wales are not in a joint venture with Phatthana and SSF.  *See* Motion, 8:1-10:25.  To the extent Plaintiffs have not otherwise addressed these issues, the Court concludes that they have been conceded.  *See Ramirez v. Ghilotti Bros. Inc.*, 941 F.Supp. 2d 1197 (N.D. Cal. 2013) (deeming argument was conceded where the defendant failed to address it in its opposition); *see also, Qureshi v. Countrywide Home Loans, Inc.*, 2010 WL 841669, *6 n. 2 (N.D. Cal. Mar. 10, 2010) (deeming plaintiff's failure to address in opposition brief claims challenged in a motion to dismiss, an "abandonment of those claims") (*citing Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n. 4 (9th Cir. 2005)).

### 1.   There are No Facts Demonstrating that Rubicon and Wales Knowingly Participated in a Human Trafficking Venture.

A defendant who "knowingly benefits . . . from participation in a venture which has engaged in any act in violation of section 1581(a), 1592, or 1595(a)" can be liable under the TVPRA. Plaintiffs argue that Rubicon and Wales have satisfied the requirement of participation in a human trafficking venture by merely purchasing seafood from Phatthana and undertaking to jointly market and sell that seafood in the United States.  Opposition, 7:10-12.  In support of their argument, Plaintiffs contend that it is not necessary for a defendant to have any direct role in the illegal activities of the venture because the TVPRA criminalizes merely "passive" beneficiaries.  However, Plaintiffs' argument relies on the definition of "venture" in the TVPRA that expressly relates solely to sex trafficking – "any group of two or more individuals associated in fact, whether or not a legal entity" – and, thus, is not applicable in this case.  In addition, the relevant case law requires more than receipt of a passive benefit to satisfy the TVPRA's participation in a venture element.  For example, in *Bistline v. Jeffs*, 2017 WL 108039 (D. Utah Jan. 11, 2017), the court held that:

> Regardless of whether Defendants knowingly benefitted from alleged forced labor, Plaintiffs have failed to adequately plead that Defendants "participat[ed] in a venture" to provide or obtain that labor.  The term "venture" is defined [in *Black's Law Dictionary*] as "an undertaking that involves risk," and is typically associated with "a speculative commercial enterprise."  Neither "participation" nor "venture" has been defined in the context of 18 U.S.C. § 1589(b).  In the RICO context, however, courts have rejected the idea that providing professional services equates to "participating" in an enterprise.  In RICO cases, a party is deemed to have participated only if they took part in the operation and management of the enterprise.  This requires more than associating with or assisting an enterprise, even when assistance is given with the knowledge of an enterprise's illicit nature.

In dismissing Plaintiffs' TVPRA claim, the court held that:

> Defendants' alleged actions do not equate to participation in [the non-moving defendant's] alleged venture to profit from forced labor.  Without some indication that Defendants took some action to operate or manage the venture, the fact that [the non-moving defendant] allegedly misused Trust property as leverage to compel forced labor is not enough to make Defendants liable under Section 1589(b).  Therefore, even if the money . . . was obtained by [the non-moving defendant] in a way that violated Section 1589(a), Plaintiffs have inadequately pleaded that [Defendants] participated in that venture, and this claim is therefore dismissed.

*Id.; see also U.S. v. Afyare*, 632 Fed. App'x 272, 286 (6th Cir. 2016) (holding that a defendant must "actually participate and commit some 'overt act' that furthers" the criminal "aspect of the venture" and that the TVPRA "did not criminalize" any lesser conduct).  Thus, even assuming arguendo that Phatthana and SSF were engaged in a human trafficking venture, Plaintiffs have presented no evidence that Rubicon and Wales "took some action to operate or manage the venture," such as directing or participating in Phatthana's labor recruitment, Phatthana's employment practices, or

the working conditions at Phatthana's Songkhla factory.[4]

Accordingly, Plaintiffs have failed to demonstrate that Rubicon or Wales knowingly participated in a human trafficking venture.

### 2. There is No Evidence that Rubicon or Wales Knew or Should Have Known About Phatthana's Alleged Human Trafficking.

Even if Rubicon and Wales could somehow be characterized as participants in a human trafficking venture with Phatthana, Plaintiffs have failed to present any evidence that Rubicon or Wales knew or should have known that human trafficking was occurring. *See* 18 U.S.C. § 1595(a) ("whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter"). To the contrary, the evidence demonstrates that Rubicon and Wales actively sought to source product from companies that did not exploit their workers. In addition, there is no evidence that Rubicon and Wales directed or participated in Phatthana's labor recruitment, Phatthana's employment practices, or that they were involved in establishing the working conditions at Phatthana's Songkhla factory. Instead, Rubicon reasonably relied on industry and government audits and certifications to ensure that Phatthana's Songkhla factory met industry standards relating to worker safety and welfare and was in compliance with the labor laws.[5] Moreover, Rubicon returned the product it had purchased from Phatthana's factory after the allegations of worker exploitation were made public. Deposition of Rubicon Resources, LLC by Brian Wynn, 19:8-18. Rubicon did not place any additional orders with Phatthana until after the Thai and Cambodian governments investigated the allegations and announced that the workers at Phatthana's Songkhla factory were not victims of human trafficking. *Id.*

Plaintiffs argue that Rubicon and Wales knew or should have known that Phatthana allegedly engaged in force labor based on general reports about human trafficking in Thailand and reports and letters by advocacy groups – such as Human Rights Watch and the Community Legal Education Center – during the April to December 2012 time period specifically criticizing the working conditions at Phatthana's Songkhla factory. However, Rubicon's and Wales's knowledge of forced labor – at a factory that they did not own, operate, or have any control over – cannot be

---

[4] Rubicon and Wales did not have a business relationship with SSF and, thus, clearly could not have participated in any alleged human trafficking venture with SSF. In the absence of any business relationship with SSF, it is also clear that Rubicon and Wales could not have benefitted from any alleged human trafficking conducted by SSF and they would not have known or had any reason to know about any alleged human trafficking conducted by SSF. Accordingly, the Court concludes that Rubicon and Wales are entitled to summary judgment on any claims based on SSF's violations of the TVPRA.

[5] Although Wales did not conduct an independent investigation, it is undisputed that Wales relied on Rubicon to ensure that the seafood was purchased from companies that did not exploit workers.

based solely on conflicting and sometime unsubstantiated general reports.[6]  *See, e.g., Doe I. V. Nestle USA, Inc.*, 766 F.3d 1013, 1017 n.1 (9th Cir. 2014) ("The defendants are well aware of the child slavery problem in the Ivory Coast.  They acquired this knowledge firsthand through their numerous visits to Ivorian farms."); *Adhikari v. Daoud & Partners*, 697 F.Supp. 2d 674, 684 (S.D. Tex. 2009) (alleging that the defendant knew forced labor and trafficking was occurring "through statements and complaints made by laborers" to the defendant).

Accordingly, Plaintiffs have failed to demonstrate that Rubicon or Wales knew or should have known that human trafficking existed at Phatthana's Songkhla factory.

### 3. There is No Evidence that Rubicon Benefitted From Phatthana's Alleged Human Trafficking.

It is undisputed that Rubicon never sold any product processed at Phatthana's Songkhla factory during the time that any of the Plaintiffs were employed there.  As a result, Plaintiffs advance a number of novel theories – such as Rubicon's *attempt* to benefit from the sale of product processed at Phatthana's Songkhla factory – without any factual or legal support for these theories.  For example, Plaintiffs argue that Rubicon benefitted from Phatthana's alleged human trafficking because Plaintiffs' labor at the Songkhla factory in 2010 until 2012 was somehow responsible for Rubicon's ability to attract Walmart and others as customers.  However, Walmart was a customer of Rubicon well before Phatthana's Songkhla factory even began its operations.  Plaintiffs also argue that Rubicon benefitted from Phatthana's alleged human trafficking because Phatthana's Songkhla factory was the "primary source of supply" for Rubicon.  However, Rubicon had been selling seafood since 1999, and during the relevant time period was selling approximately 35 million pounds of seafood per year.  Accordingly, the 14 containers of seafood purchased and ultimately returned during the same time period hardly qualifies as a "primary source of supply."

Although the Court has considered each of Plaintiffs' novel arguments, the Court concludes that they do not support Plaintiffs' benefit theory of liability.

## IV. Conclusion

For all the foregoing reasons, Rubicon's and Wales's Motion is **GRANTED** in its entirety.

IT IS SO ORDERED.

---

[6] In addition, Plaintiffs argue that "[i]t is undisputed that Rubicon employees regularly visited the factories in Thailand, including the Songkhla factories, and had the opportunity to observe workers."  Opposition, 4:24-28.  However, there is no evidence demonstrating what any Rubicon employee may have seen or heard while at Phatthana's factory. Moreover, the methods of coercion alleged – deducting advances from workers' wages, holding workers' passports, and oral misrepresentations made by alleged Phatthana "agents" in rural Cambodian villages – were either impossible to detect or unlikely to be detected by merely visiting the factory to review operations.