**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

| | | |
|---|---|---|
| Case No. | **CV 16-4271-JFW (ASx)** | Date: December 21, 2017 |
| Title: | Keo Ratha, et al. -v- Phatthana Seafood Co., Ltd., et al. | |

**PRESENT:**

**HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Shannon Reilly | None Present |
| Courtroom Deputy | Court Reporter |

| | |
|---|---|
| **ATTORNEYS PRESENT FOR PLAINTIFFS:** | **ATTORNEYS PRESENT FOR DEFENDANTS:** |
| None | None |

**PROCEEDINGS (IN CHAMBERS):** ORDER GRANTING DEFENDANT PHATTHANA SEAFOOD CO., LTD.'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT [filed 147; Docket No. 11/20/17]

On November 20, 2017, Phatthana Seafood Co., Ltd. ("Phatthana") filed a Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment ("Motion"). On November 27, 2017, Plaintiffs Keo Ratha ("Ratha"), Sem Kosal ("Kosal"), Sophea Bun ("Bun"), Yem Ban ("Ban"), Nol Nakry ("Nakry"), Phan Sophea ("Sophea"), and Sok Sang ("Sang") (collectively, "Plaintiffs") filed their Opposition. On December 4, 2017, Phatthana filed a Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument. The matter was, therefore, removed from the Court's December 18, 2017 hearing calendar and the parties were given advance notice. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.   Factual and Procedural Background**[1]

**A.   Factual Background**

---

[1] To the extent any of these facts are disputed, they are not material to the disposition of this motion. In addition, to the extent that the Court has relied on evidence to which the parties have objected, the Court has considered and overruled those objections. As to the remaining objections, the Court finds that it is unnecessary to rule on those objections because the disputed evidence was not relied on by the Court.

In their Complaint, Plaintiffs bring claims under the Trafficking Victims Protection Reauthorization Act ("TVPRA") against Phatthana, S.S. Frozen Food Co., Ltd. ("SSF"), Rubicon Resources, LLC ("Rubicon"), and Wales & Co. Universe, Ltd. ("Wales") (collectively, "Defendants"). Plaintiffs are rural Cambodian villagers who allege they were victims of human trafficking as a result of their recruitment and employment at seafood processing factories in Songkhla, Thailand. SSF, a family-owned Thai corporation, and Phatthana, a Thai corporation, own the factories at which Plaintiffs worked. The factory Phatthana owned in Songkhla operated from late 2010 until it closed in 2013. Six of the Plaintiffs (Kosal, Bun, Ban, Nakry, Sophea, and Sang) worked at Phatthana's Songkhla factory during the period from 2010 until 2012. In the Spring of 2012, the media reported on worker complaints at Phatthana's Songkhla factory, prompting investigations by the Thai and Cambodian governments. The Thai and Cambodian governments ultimately concluded that no crimes had been committed under the Thai Anti-Trafficking Act and that workers had not been exploited.

Rubicon and Wales, which have addresses in the United States, did not recruit or employ Plaintiffs, but are alleged to have benefitted from their labor. Rubicon, a Delaware limited liability company with its principal place of business in Culver City, California, was formed in 1999 as a joint venture to market and sell seafood to customers in the United States. Wales, a Thai corporation registered to do business in California, is a member of Rubicon.[2]

Phatthana has never had any employees in the United States or an address in the United States. In addition, Phatthana has never had an ownership interest in any of the other Defendants (SSF, Rubicon, or Wales) and none of the other Defendants have ever had an ownership interest in Phatthana. Rubicon ordered product from Phatthana, including product that was processed at Phatthana's Songkhla factory during the time all Plaintiffs except Ratha worked there. In addition, Wales inspected finished product ordered by Rubicon to ensure that product met Rubicon's customers' packaging specifications, including the product Rubicon ordered from Phatthana's Songkhla factory during the time all Plaintiffs except Ratha worked there.

### B. Procedural Background

On June 15, 2016, Plaintiffs filed a Complaint against Defendants, alleging claims for: (1) violation of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595, against Phatthana and SSF and Rubicon and Wales; and (2) violation of the Alien Tort Statue ("ATS") against all Defendants. Specifically, Plaintiffs allege in Count 1 that they were victims of peonage, forced labor, involuntary servitude, and human trafficking by Phatthana and SSF in violation of Sections 1581 (peonage), 1584 (sale into involuntary servitude), 1589 (forced labor), 1590 (trafficking with respect to peonage, slavery, involuntary servitude, or forced labor), 1592 (unlawful conduct with respect to documents in furtherance of trafficking, peonage, slavery, involuntary servitude, or forced labor), and 1593A (benefitting financially from peonage, slavery, and trafficking in persons). Plaintiffs allege in Count 2 that Rubicon and Wales knowingly benefitted from participation in a venture that they knew or should have known was engaged in peonage, forced labor, involuntary servitude, unlawful conduct with respect to documents, and human trafficking. Plaintiffs allege in Count 3 that they were the victims of the torts of trafficking in

---

[2] Although there are other members of Rubicon, they are not Defendants in this action.

persons, involuntary servitude, and forced labor. On November 7, 2016, the Court granted in part and denied in part Defendants' Motion to Dismiss Complaint. In the November 7, 2016 Order, the Court granted Defendants' Motion to Dismiss Complaint with respect to Plaintiff's ATS claims and dismissed the ATS claim without leave to amend, and denied Defendants' Motion to Dismiss Complaint with respect to Plaintiffs' TVPRA claims. On November 23, 2016, Defendants filed their Answers. On December 14, 2016, Defendants filed Amended Answers. All Defendants have now filed motions for summary judgment.

## II. Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party meets its burden, a party opposing a properly made and supported motion for summary judgment may not rest upon mere denials but must set out specific facts showing a genuine issue for trial. *Id.* at 250; Fed. R. Civ. P. 56(c), (e); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data."). In particular, when the non-moving party bears the burden of proving an element essential to its case, that party must make a showing sufficient to establish a genuine issue of material fact with respect to the existence of that element or be subject to summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is not enough to defeat summary judgment; there must be a genuine issue of material fact, a dispute capable of affecting the outcome of the case." *American International Group, Inc. v. American International Bank*, 926 F.2d 829, 833 (9th Cir. 1991) (Kozinski, dissenting).

An issue is genuine if evidence is produced that would allow a rational trier of fact to reach a verdict in favor of the non-moving party. *Anderson*, 477 U.S. at 248. "This requires evidence, not speculation." *Meade v. Cedarapids, Inc.*, 164 F.3d 1218, 1225 (9th Cir. 1999). The Court must assume the truth of direct evidence set forth by the opposing party. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992). However, where circumstantial evidence is presented, the Court may consider the plausibility and reasonableness of inferences arising therefrom. *See Anderson*, 477 U.S. at 249-50; *TW Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631-32 (9th Cir. 1987). Although the party opposing summary judgment is entitled to the benefit of all reasonable inferences, "inferences cannot be drawn from thin air; they must be based on evidence which, if believed, would be sufficient to support a judgment for the nonmoving party." *American International Group*, 926 F.2d at 836-37. In that regard, "a mere 'scintilla' of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997).

## III. Discussion

In its Motion, Phatthana seeks summary judgment on the only claim alleged against it – violation of the TVPRA – on the grounds that this Court does not have subject matter jurisdiction over that claim because all of the alleged human trafficking of Plaintiffs occurred in Cambodia and Thailand and Phatthana, a Thai company, does not fall under TVPRA's limited grant of

extraterritorial jurisdiction. In addition, Phattahana seeks summary judgment on the grounds that Phattahana did not violate the TVPRA with respect to Plaintiffs Ban, Nakry, and Sang.

### A. The TVPRA

The TVPRA was enacted to address the serious problem of human trafficking into and from the United States. Although it is primarily a criminal statute, it also contains a civil remedy provision:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees.

18 U.S.C. §1595(a). The TVPRA was amended in 2008 to add a limited grant of extraterritorial jurisdiction:

> In addition to any domestic or extra-territorial jurisdiction otherwise provided by law, the courts of the United States have extra-territorial jurisdiction over any offense (or any attempt or conspiracy to commit an offense) under section 1581, 1583, 1584, 1589, 1590, or 1591 if –
>
> (1) an alleged offender is a national of the United States or an alien lawfully admitted for permanent residence (as those terms are defined in section 191 of the Immigration and Nationality Act (8 U.S.C. 1101));
> or
> (2) an alleged offender is present in the United States, irrespective of the nationality of the alleged offender.

18 U.S.C. §1596(a).[3] According to the legislative history, Section 1596 was enacted to "facilitat[e] extraterritorial prosecutions against international trafficking criminals" and eliminate the United States as a "safe haven" for non-U.S. citizens who commit crimes abroad. H.R. Rep. No. 110-430(I), at 35, 55 (2007); *Legal Options to Stop Human Trafficking: Hearing before the Subcomm. on Human Rights and the Law of the S. Comm. on the Judiciary*, 110th Cong. 24-25 (2007) (statement of Sen. Richard J. Durbin, Chairman, S. Subcomm. on Human Rights and the Law).

### B. This Court Does Not Have Subject Matter Jurisdiction Over the Claim Alleged Against Phatthana.

---

[3] The grant of extraterritorial jurisdiction under Section 1596 of the TVPRA does not extend to the violations of Section 1592 (unlawful conduct with respect to documents in furtherance of trafficking, peonage, slavery, involuntary servitude, or forced labor) and 1593A (benefitting financially from peonage, slavery, and trafficking in persons)) alleged in Plaintiffs' Complaint.

In its Order granting in part and denying in part Defendants' Motion to Dismiss Complaint, the Court held that, at the pleading stage, Plaintiffs had sufficiently alleged subject matter jurisdiction:

> [T]he Court concludes that given Plaintiffs' allegations in the Complaint, subject matter jurisdiction exists. A corporation is present in a jurisdiction where it uses an agent to conduct its affairs. In their Complaint, Plaintiffs have alleged that Defendants are involved in a joint venture and part of an "integrated enterprise." In addition, Plaintiffs allege that Rubicon and Wales are physically present in the United States and are joint venturers or agents of Phatthana and [SSF], which is sufficient for subject matter jurisdiction over all Defendants.

In its Motion, Phatthana again challenges subject matter jurisdiction and now argues that the undisputed facts demonstrate that the Court lacks subject matter jurisdiction over Plaintiffs' claims because Plaintiffs have failed to demonstrate that Phatthana is present in the United States. Plaintiffs argue that subject matter jurisdiction exists because Phatthana never contested personal jurisdiction, thereby waiving any argument that there is no subject matter jurisdiction. In addition, Plaintiffs claim that subject matter jurisdiction exists because Phatthana is a member of the Rubicon joint venture or because Rubicon is Phatthana's agent.[4] The Court concludes that none of Plaintiffs' theories demonstrate that the Court has subject matter jurisdiction over the claim alleged against Phatthana.

### 1. Minimum Contacts

In their Opposition, Plaintiffs argue that because Phatthana never contested personal jurisdiction, it should be estopped from challenging subject matter jurisdiction. However, as Phattahana correctly argues, subject matter jurisdiction can never be waived. Fed. R. Civ. P. 12(h)(3); *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982). In addition, there is no authority to support Plaintiff's argument that "present in" as used in Section 1596(a)(2) of the TVPRA has the same meaning as the terms "'present' or 'presence'" typically used in the minimum contacts analysis for determining personal jurisdiction. Plaintiffs argue that Congress – by changing the language in the original version of Section 1596(a)(2) from "the alleged offender is brought into, or found in, the United States" to "an alleged offender is present in the United States" – intended to eliminate the physical presence requirement and, thus, intended that minimum contacts would be sufficient. However, the legislative history relied on by Plaintiffs fails to explain why Congress made the change in the language in the original version of §1596(a)(2). Moreover, the case law relied on by Plaintiffs contradicts their argument that the

---

[4] Phatthana also moved for summary judgment on the grounds that none of the Defendants are alter egos of one another. *See* Motion, 7:21-9:6. To the extent Plaintiffs have not otherwise addressed this issue, the Court concludes that it has been conceded. *See Ramirez v. Ghilotti Bros. Inc.*, 941 F.Supp. 2d 1197 (N.D. Cal. 2013) (deeming argument was conceded where the defendant failed to address it in its opposition); *see also, Qureshi v. Countrywide Home Loans, Inc.*, 2010 WL 841669, *6 n. 2 (N.D. Cal. Mar. 10, 2010) (deeming plaintiff's failure to address in opposition brief claims challenged in a motion to dismiss, an "abandonment of those claims") (*citing Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n. 4 (9th Cir. 2005)).

phrase "present in" without the modifier "physical" means that minimums contacts suffices. For example, in *U.S. v. Yousef*, 327 F.3d 56 (2d Cir. 2003), the court held that the phrase "present in" – without the modifier "physical" – has the same meaning as "found in" in the context of determining the extraterritorial jurisdiction of a criminal statute. *Id*. at 90. Therefore, the Court concludes that Plaintiffs cannot establish extraterritorial jurisdiction, and thus subject matter jurisdiction, by simply relying on their minimum contacts analysis. To the contrary, substituting personal jurisdiction for extraterritorial jurisdiction would not only make subsection (a)(1) superfluous, but would also expand the reach of extraterritorial jurisdiction to offenses wholly occurring in foreign countries, exclusively involving foreign victims, and that were perpetrated by foreign offenders who never set foot in the United States. This unwarranted expansion does not comport with the "basic premise of our legal system that, in general, 'United States law governs domestically but does not rule the world.'" *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090, 2100 (2016).

Accordingly, Plaintiffs have failed to demonstrate that the Court has subject matter jurisdiction over Plaintiffs' claim against Phatthana because Phatthana failed to contest personal jurisdiction.[5]

### 2. Joint Venture

Plaintiffs also argue that this Court has subject matter jurisdiction because Phatthana "is a member of the Rubicon joint venture."[6] Under California law, the essential elements of a joint venture are: (1) a joint interest in a common business; (2) an understanding that profits and losses will be shared; and (3) a right to joint control.[7] *Ramirez v. Long Branch Unified School District*, 105 Cal. App. 4th 182, 193 (2002). "To create a joint venture under Delaware law, 'there must be (1) a community of interest in the performance of a common purpose, (2) joint control or right of control, (3) a joint proprietary interest in the subject matter, (4) a right to share in the profits, [and] (5) a duty to share in the losses which may be sustained.'" *Transocean Group Holdings Pty Ltd. v.*

---

[5] Similarly, the Court rejects Plaintiffs argument that Phatthana does not need to be "present in" the United States because "an alleged offender" – either Rubicon or Wales – is present in the United States. Under this theory, Plaintiffs argue that they would not have to demonstrate that there was any conspiracy, aiding and abetting, joint venture, agency, alter ego, or integrated enterprise between Phatthana and Rubicon or Wales. Instead, Plaintiffs argue that naming Phatthana, Rubicon, and Wales in the same action is sufficient. However, as with Plaintiffs' minimum contacts argument, this argument does not comport with the "basic premise of our legal system that, in general, 'United States law governs domestically but does not rule the world.'" *RJR Nabisco*, 136 S. Ct. at 2100.

[6] Plaintiffs contend that because Rubicon is present in the United States, if Rubicon and Phatthana are in either a joint venture or agency relationship, Phatthana will, by virtue of its relationship with Rubicon, also be present in the United States.

[7] Defendant argues that Delaware law applies because Rubicon is a Delaware limited liability company and the other Defendants are Thai companies. Plaintiffs argue that California law applies. However, as Phatthana points out, the essential elements of a joint venture under either California or Delaware law are the same.

*South Dakota Soybean Processors, LLC*, 663 F. Supp. 2d 731, 739 (D. Minn. 2009) (*quoting Warren v. Goldinger Bros., Inc.*, 414 A.2d 507, 509 (Del.1980)). "While an agreement to enter into such an arrangement does not necessarily require a written contract, there must of course be some evidence that the parties voluntarily chose to create this legal status." *Transocean Group,* 663 F. Supp. 2d at 739 (citation omitted).

In this case, it is undisputed that Rubicon was formed in 1999 as a joint venture to market and sell seafood to customers in the United States. According to the testimony of Brian Wynn ("Wynn"), he prepared the business plan for Rubicon, which described the business structure and objectives of the company. Wynn traveled to Thailand to present the business plan to the principal exporters with whom he had prior relationships. Wynn presented his business plan to five potential investors. Although two potential investors decided not to participate, three entities ultimately agreed to become partners. As a result, the Limited Liability Company Agreement of Rubicon Resources, LLC, effective as of July 14, 1999 (the "Joint Venture Agreement"), was entered into by and among Wynn, Wales, Thailand Fishery Cold Storage Public Co. Ltd. ("Thailand Fishery), and P&M Holdings Co. Ltd. ("P&M Holdings").[8] Pursuant to Section 7.1 of the Joint Venture Agreement, Wynn was appointed the sole Manager.[9]

The Joint Venture Agreement provides that it was the parties' desire "to enter into this [Joint Venture] Agreement to provide for the formation of [Rubicon], the management of the business and affairs of [Rubicon], the allocation of the profits and losses, the distribution of cash of [Rubicon] among the Members, the respective rights, obligations and interests of the Members to each other and to [Rubicon], and certain other matters." Section 1.10 of the Joint Venture Agreement defined the business of Rubicon as the "marketing and distributing all kinds of seafood and other foods as may be designated by the Members within the territory of the United States of America." In addition, pursuant to Section 12.1, Wales, Thailand Fishery, and P&M Holdings "each agree that they will jointly, at all times while any of them is a Member, supply the Company with its requirements of seafood products, on terms to be mutually agreed upon by" Wales, Thailand Fishery, P&M Holdings and Rubicon.

The "Company Interest" is defined in Section 1.16 as "the ownership interest of such Member in [Rubicon] as of such date, including all of such Member's rights and obligations under the Act and this [Joint Venture] Agreement." Exhibit A to the Joint Venture Agreement sets forth

---

[8] Although the original Joint Venture Agreement was entered into on July 14, 1999, it has been amended seven times. In addition, although the four original Members were Wynn, Wales, Thailand Seafood, and P&M Holdings, pursuant to the Sixth Amendment to the Joint Venture Agreement, entered into on September 9, 2009, Thailand Fishery's Company Interest was transferred to Andaman Seafood Co., Ltd. ("Andaman"). Subsequently, pursuant to the Seventh Amendment to the Joint Venture Agreement, entered into on September 9, 2012, Andaman transferred all its Company Interest to Rubicon. Accordingly, as of the date of the Seventh Amendment to the Joint Venture Agreement, Wynn, Wales, and P&M Holdings each had a Company Interest of 33 1/3%. In May 2017, Wynn, Wales, and P&M Holdings sold their interests in Rubicon to High Line Food, and, thus, are no longer Members.

[9] Wynn's authority as Manager is discussed in Section 7.2. Although Wynn sold his interest in Rubicon, he continues in this capacity.

the initial Company Interest of each of the original Members as follows: (1) Wynn – 25%; (2) Thailand Fishery – 25%; (3) P&M Holdings – 25%; and (4) Wales – 25%.  In addition, pursuant to Section 3.1 of the Joint Venture Agreement, each Member was required to contribute capital in the amounts set forth in Exhibit A ("Capital Contribution"): (1) Wynn – $125,000; (2) Thailand Fishery – $125,000; (3) P&M Holdings – $125,000; and (4) Wales – $125,000.  Section 4.3 of the Joint Venture Agreement provides for net income and net loss for each fiscal year to be allocated to the Members as provided in Subsections 4.3.1 and 4.3.2 based on the Member's Capital Accounts.  The net losses of Rubicon are allocated to the Members, pro rata, in accordance with their Capital Accounts until the balance of the Members' Capital Accounts has been reduced to zero.  Thereafter, any remaining net losses are allocated to the Members in accordance with their respective Company Interests.

The Court agrees with Plaintiffs that "the creation of Rubicon was an undertaking to carry out a single business enterprise jointly and for profit."  Opposition, 7:6-7.  However, the Court disagrees that Phatthana was a part of that joint venture.  As evidenced by the Joint Venture Agreement, the Members of the Rubicon joint venture were Wynn, Wales, Thailand Fishery, and P&M Holdings, and not Phatthana.  The Court also agrees with Plaintiffs that, under California law, the essential elements of a joint venture are: (1) a joint interest in a common business; (2) an understanding that profits and losses will be shared; and (3) a right to joint control.  It is undisputed that each of these essential elements was addressed and agreed to by the Members in the Joint Venture Agreement.  *See* Section 1.10 (defining the business of Rubicon as the "marketing and distributing all kinds of seafood and other foods as may be designated by the Members within the territory of the United States of America"), Section 4.3 (providing for the allocation of net income and net loss for each fiscal year to the Members as provided in Subsections 4.3.1 and 4.3.2 based on the Member's Capital Accounts) and Section 1.16 (defining the "Company Interest" as "the ownership interest of such Member in [Rubicon] as of such date, including all of such Member's rights and obligations under the Act and this [Joint Venture] Agreement") and Exhibit A (setting forth the Company Interest and Capital Contribution of each Member).

Because Phatthana was never a party to the Joint Venture Agreement, Plaintiffs attempt to connect Phatthana to the Rubicon joint venture by relying on evidence that Dussadeevutikul is the controlling shareholder in Phatthana, which was one of the sources of seafood for Rubicon, and the owner of P&M Holdings, which is a party to the Joint Venture Agreement.  However, that evidence fails to demonstrate that Rubicon and Phatthana had any agreement or intention to operate the two companies as co-owners or that there was an agreement to share management responsibilities, which are essential elements of a joint venture.  To the contrary, it is undisputed that Wynn, who was designated in the Joint Venture Agreement as the sole Manager of Rubicon, had full responsibility for the management of Rubicon's business as provided for in Section 7.2 of the Joint Venture Agreement.  Moreover, based on Wynn's deposition testimony, he rarely, if ever, visited Phatthana's factory in Songkhla, and certainly had no responsibility for the operation of any aspect of Phatthana's business.  Plaintiffs have also offered no proof of any agreement that Rubicon and Phatthana would share profits and losses.  In addition, Plaintiffs have failed to establish another crucial element of a joint venture, namely that the parties have joint control and management of the business.  In fact, the only evidence presented by Plaintiffs demonstrates that

Rubicon and Phatthana had, at most, a purchaser-supplier relationship.[10]  Contrary to Plaintiffs' argument, the evidence demonstrates that both Rubicon and Phatthana at all times acted in accordance with their own business plans without regard to the effect of those plans on the other, which is entirely inconsistent with the nature of a joint venture relationship.[11]

Accordingly, the Court concludes that Phatthana is entitled to summary judgment on Plaintiffs' joint venture theory.

### 3. Agency

Plaintiffs ague that this Court has subject matter jurisdiction because Rubicon is Phatthana's agent.  Under California law, "[a]n agent is one who represents another, called the principal, in dealings with third persons."  Cal. Civ. Code § 2295.  "Agency requires that the principal maintain control over the agent's actions."  *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1232 (9th Cir. 2013).  A purchaser-supplier relationship in which goods are purchased from the supplier for resale does not create an agency relationship.  *Id.* at 1232; *Doe v. Nestles, S.A.*, 748 F.Supp. 2d 1057, 1112-13 (C.D. Cal. 2010), *reversed and vacated on other grounds by* 766 F.3d 1013 (9th Cir. 2014) (concluding that "the Court disagrees with Plaintiffs' assertion that a 'long-term' and 'exclusive' buyer-supplier relationship transforms an arms-length commercial relationship into an agency relationship in which the buyer is liable for the suppliers' actions" and finding that "[s]uch a conclusion would be contrary to general principles of agency law").

In this case, Plaintiffs have presented no evidence demonstrating that an agency relationship exists between Phatthana and Rubicon.  Instead, the evidence demonstrates that Rubicon's and Phatthana's relationship was nothing more than an ordinary purchaser-supplier relationship.  For example, on those limited occasions when Rubicon placed an order with Phatthana, Phatthana would, in the normal course of business, generate purchase orders reflecting the terms and conditions of the sale to Rubicon.  There was nothing different or unusual about the way Phatthana filled Rubicon's orders.  In fact, Rubicon's business relationship with Phatthana was identical to its relationship with other suppliers of seafood.  In addition, there is no evidence that Phatthana exercised any control, or had any right to control, any aspect of Rubicon's business, including its product sourcing from other factories.  In the absence of any such evidence that Rubicon had any control over Phatthana, Plaintiffs have failed to demonstrate the existence of any agency relationship.  As further evidence of the lack of any agency relationship, Rubicon had exclusive relationships with its retail customers in the United States – such as Walmart and Kroger – and Phatthana was not a party to those vendor agreements or in any way involved in those relationships.  Finally, the fact that Rubicon was designated as Phatthana's "agent" with the FDA is not sufficient to transform their supplier-purchaser relationship into an agency relationship.  Under FDA regulations, the designee merely "acts as a communications link between FDA and the

---

[10]  Although the seafood purchased by Rubicon from Phatthana was intended to ultimately be sold by Rubicon to its customers in the United States, those customers had no direct business association with Phatthana.

[11]  For example, Rubicon received approximately 12 to 14 shipments of product from Phatthana's Sonkhla factory from 2010 to 2013, but held those shipments in inventory and ultimately returned all of them to Phatthana.

foreign facility." 21 C.F.R. § 1.227. Thus, Phatthana's designation of Rubicon as its agent for the FDA is limited to the FDA and does not satisfy the elements necessary to establish an agency relationship under California law.

Accordingly, the Court concludes that Phatthana is entitled to summary judgment on Plaintiffs' agency theory.

### C. Phatthana Did Not Violate the TVPRA.

Although Plaintiffs' allegations survived Defendants' Motion to Dismiss, the Court concludes that, even if subject matter jurisdiction did exist, Plaintiffs have failed to present evidence to support the claims of Plaintiffs Ban, Nakry, and Sang. For example, Plaintiffs have not demonstrated that Phatthana engaged in force, threats of force, physical restraint, or threats of physical restraint to compel Ban, Nakry, and Sang to work at its Songkhla factory. In addition, Ban's, Nakry's, and Sang's work permits and alien registration cards required them to work exclusively at Phatthana. Thus, even assuming Phatthana refused to return those documents, they would not have been able to leave Phatthana and seek other employment. Moreover, Ban, Nakry, and Sang were prevented from traveling freely throughout Thailand and returning to Cambodia because they had entered Thailand illegally and not because their documents may have been withheld.

Accordingly, Phatthana is entitled to summary judgment on Plaintiffs' TVPRA claim with respect to Ban, Nakry, and Sang.

## IV. Conclusion

For all the foregoing reasons, Phatthana's Motion is **GRANTED** in its entirety.

IT IS SO ORDERED.